# EXHIBIT A

DocuSign Envelope ID: EC427D35-7803-495A-A963-DD3AE0DB3B63

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| TEXAS MEDICAL ASSOCIATION and DR. ADAM CORLEY, | ) ) ) |
| *Plaintiffs*, | ) ) ) |
| v. | ) ) ) |
| UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, DEPARTMENT OF LABOR, DEPARTMENT OF THE TREASURY, OFFICE OF PERSONNEL MANAGEMENT, and the CURRENT HEADS OF THOSE AGENCIES IN THEIR OFFICIAL CAPACITIES, | ) ) ) ) ) ) ) ) ) ) Case No.: 6:21-cv-00425-JDK |
| *Defendants*. | ) |

## DECLARATION OF E. LINDA VILLARREAL, MD
## PRESIDENT OF THE TEXAS MEDICAL ASSOCIATION

I, E. Linda Villarreal, MD, solemnly declare under penalty of perjury and to the best of my knowledge, information, and belief as follows:

1. I am over 18 years of age and with capacity, and I provide this declaration based on my personal knowledge.

2. I am a citizen of the United States and a resident of Edinburg, Texas.

3. I am the President of the Texas Medical Association ("TMA").

4. TMA is a professional, member-driven nonprofit association representing over 55,000 physicians, residents, and medical students. Located in Austin, Texas, TMA has 110 component county medical societies throughout the state. It is the largest state medical society in the United States.

5.  TMA stands up for Texas physicians by providing distinctive solutions to the challenges they encounter in the care of patients. Among other objectives, TMA seeks to ensure that Texas physicians receive timely and equitable payment for medical services rendered. This lawsuit is germane to TMA's organizational mission.

6.  TMA and its physician members recognize that "surprise medical billing" is a significant problem in Texas and throughout the country. Its physician members have frequently drawn attention to the fact that a confusing health insurance system can leave patients with unexpected out-of-pocket costs and inadequate coverage, and physicians frustrated by limited access to patients and their health plan networks. TMA has supported state legislation that would strengthen insurance plan networks and arm patients with more information to lessen the likelihood of receiving a surprise bill, while preserving physicians' rights to bill for care they provide. TMA also supported Texas' surprise billing law, as passed in 2019. *See* Senate Bill 1264, 86th Leg. Reg. Session (Tex. 2019). In response to incidents of alleged price gouging and surprise medical bills during the COVID-19 pandemic, TMA submitted written comments to the Texas House Committee on Insurance, urging lawmakers to avoid cost-shifting from health plans to patients or physicians, both of whom are facing strained resources as they battle the virus.

7.  TMA's members include Texas physicians who provide out-of-network services. Reimbursement for some of those out-of-network services will be resolved through the Texas surprise medical billing law, SB 1264, which is a specified state law for the services, providers, and plans falling within its scope. For services, providers, or plans falling within the NSA but not covered by Texas' surprise medical billing law, out-of-network reimbursement is controlled by the NSA. Absent a mutual agreement of the parties, the amount of reimbursement for those services will likely be determined through the NSA's IDR process. TMA's members include Texas physicians who provide out-of-network services covered by the NSA. Absent a mutual agreement of the parties,

2

the amount of reimbursement for these services will likely be determined through the NSA's IDR process.

8.  The "rebuttable presumption" in favor of the QPA adopted in the September IFR will systematically favor payors and reduce out-of-network reimbursement rates compared to a process in which IDR entities are free to consider all the statutory factors without a presumption that the QPA is an appropriate reimbursement amount. The Departments themselves have acknowledged this, stating that the presumption will "encourage plans, issuers, providers, and facilities to make offers that are closer to the QPA," 86 Fed. Reg. at 56,061, "aid in reducing prices," *id*. at 55996, and prevent "higher out-of-network rates," *id*.

9.  The "rebuttable presumption" therefore directly harms the financial interests of TMA's members.

Pursuant to the requirements of 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on: 12/10/2021

DocuSigned by:
E. Linda Villarreal
E2FDECF25902496...

E. Linda Villarreal, MD

3