**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| TEXAS MEDICAL ASSOCIATION, *et al.*, | |
| Plaintiffs, | |
| v. | No. 6:21-cv-00425-JDK |
| U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*, | |
| Defendants. | |

## DEFENDANTS' RESPONSE TO BRIEF OF *AMICI CURIAE*

The Defendants—the Department of Health and Human Services (HHS), the Department of Labor, and the Department of the Treasury, along with the Office of Personnel Management (OPM) (collectively, the Departments)—respectfully submit this response to the brief of Members of Congress as *amici curiae*, ECF No. 57, in accordance with this Court's order granting the Departments leave to file a separate response to that brief, ECF No. 50.  For the reasons stated below, the *amici*'s brief does not cast doubt on the legality or the reasonableness of the Departments' rule governing the procedures for the arbitration of payment disputes under the No Surprises Act.

### DISCUSSION

### I.  The Rule's Arbitration Procedures are Consistent with the No Surprises Act.

The Act instructs the Departments to "establish by regulation … one independent dispute resolution process" for arbitrators to resolve payment disputes between providers and insurers involving out-of-network medical services. 42 U.S.C. § 300gg-111(c)(2)(A).  The Departments fulfilled that responsibility by issuing an interim final rule, which comprehensively addresses the procedures for the parties to invoke the arbitration process, to select an arbitrator, and to present their offers and

their respective positions to that arbitrator, so that he or she may select one of the two offers under a "baseball" arbitration process. *See* 45 C.F.R. § 149.510(c)(4)(ii)(A); *Requirements Related to Surprise Billing: Part II*, 86 Fed. Reg. 55,980 (Oct. 7, 2021).

As explained in more detail in the Departments' Cross-Motion for Summary Judgment, ECF No. 62, the rule also directs the arbitrator to "tak[e] into account" several considerations, namely, (1) the qualifying payment amount; (2) any information that the arbitrator requests the parties to submit, if that information is credible; (3) and any additional information submitted by a party, if the information is credible, relates to certain specified circumstances as described in the regulation, and "clearly demonstrate[s] that the qualifying payment amount is materially different from the appropriate out-of-network rate." 45 C.F.R. § 149.510(c)(4)(ii)(A), (iii).

The specified circumstances, in turn, are the specific qualitative factors that are listed in the Act itself, such as the provider's level of experience and the provider's and the insurer's relative market shares. *Id.* § 149.510(c)(4)(iii)(C). The arbitrator is also instructed to consider any "[a]dditional information submitted by a party," so long as the information is credible, relates to the party's offer, and does not include information on the factors that the arbitrator is prohibited from considering under the statute. *Id.* § 149.510(c)(4)(iii)(D).

After taking these considerations into account, the arbitrator "must select the offer closest to the qualifying payment amount unless [it] determines that credible information submitted by either party under paragraph (c)(4)(i) clearly demonstrates that the qualifying payment amount is materially different from the appropriate out-of-network rate, or if the offers are equally distant from the qualifying payment amount but in opposing directions." *Id.*

For these purposes, information is "credible" if "upon critical analysis [it] is worthy of belief and is trustworthy," *id.* § 149.510(a)(2)(v), and information shows a "material difference" if there is "a substantial likelihood that a reasonable person with the training and qualifications of a certified IDR

2

entity making a payment determination would consider the submitted information significant in determining the out-of-network rate and would view the information as showing that the qualifying payment amount is not the appropriate out-of-network rate," *id.* § 149.510(a)(2)(viii).

Taking Section 149.510(c)(4)(ii) together with the regulatory definitions, the rule thus instructs the arbitrator to:  (1) begin with the qualifying payment amount; (2) consider each of the additional factors identified in the statute and regulation, including "any additional information" that the arbitrator or a party may consider to be relevant; (3) apply his or her expertise to assess whether there is a "substantial likelihood" that the information would show that the qualifying payment amount is not the appropriate out-of-network rate; and, after completing that analysis, then (4) select one of the offers as the payment rate, with the offer that is closest to the qualifying payment amount being the offer selected, unless the arbitrator finds that the additional statutory factors point in favor of a different decision.

The Departments thus reasonably exercised their authority under 42 U.S.C. § 300gg-111(c)(2)(A) to establish an arbitration process that sets forth these guidelines to structure the arbitrator's decision-making.  The rule, like the Act, is structured to list the qualifying payment amount as the first factor for the arbitrator's consideration, with the other factors for the arbitrator to consider described as "additional circumstances" or "additional information."  *Id.* § 300gg-111(c)(5)(C)(i)(II), (ii).  These circumstances could only be "additional," of course, if there were some other circumstance already in place that they could be added to—here, the qualifying payment amount.  The statute thus textually informs the reader that the analysis should begin with the qualifying payment amount, and then should move on to take into account the other statutory factors.  The rule accounts for this statutory structure, while leaving ample room for the arbitrator to address the remaining statutory factors, and to apply his or her expertise to adjust the appropriate out-of-network payment amount where the circumstances of a particular case so warrant.  *See* Defs.' Cross-Mot. for S.J. at 18-26.

## II.    The *Amici*'s Contrary Arguments Are Premised on a Misreading of the Rule.

The *amici* contend that the arbitration rule is invalid insofar as it "effectively predetermines the outcome of nearly all" payment disputes between providers and group health plans or health insurance issuers.  Br. at 2.  They express their belief that the rule violates the Act by "mandat[ing] that insurers pay out-of-network providers the median in-network rate."  *Id.* at 10; *see also id.* at 3.  But the rule that the Departments actually published does no such thing.  The *amici*, like the Plaintiffs before them, devote their arguments to challenging a version of the rule that does not exist.

The arbitration rule does not "predetermine" the outcome of arbitration proceedings, nor does it "mandate" that health plans or issuers make payment to providers at any particular rate. Instead, as discussed above, the rule instructs the arbitrator to begin with the qualifying payment amount, and then to consider each factor to determine if there is a "substantial likelihood" that the factor would be "significant" in showing that the appropriate out-of-network payment rate is materially different from the median in-network payment rate for a given medical service.  45 C.F.R. § 149.510(a)(2)(viii).  The rule thus leaves ample room for the arbitrator to apply his or her expertise to consider each of the factors that the parties bring to his or her attention.

The *amici* refer to alternative versions of surprise-billing legislation that were under consideration in the last Congress.  They note that "lawmakers proposed various bills that mandated payment of the median in-network rate in price disputes between insurers and out-of-network providers," but that "[e]ach of these proposals failed to become law."  Br. at 4.[1]  But, again, that doesn't describe the Departments' rule.  As noted, the rule affords arbitrators the discretion to depart from the qualifying payment amount when they find a "substantial likelihood" that evidence is

---

[1] The *amici*'s speculation as to why the last Congress rejected these bills is neither here nor there; their brief is an exercise in "[p]ost-enactment legislative history (a contradiction in terms)," which "is not a legitimate tool of statutory interpretation."  *Brusewitz v. Wyeth LLC*, 562 U.S. 223, 242 (2011).

"significant" in showing that the qualifying payment amount is not the appropriate out-of-network payment rate for a particular service.  And, in any event, the 116th Congress also considered and rejected bills that would have adopted the approach that the Plaintiffs in this case prefer, under which private arbitrators would be afforded a standardless delegation of authority to set payment rates at any level they choose.  *See* S. 1266, 116th Cong. (2019); H.R. 4223, 116th Cong. (2019).  The *amici*'s "argument highlights the perils of relying on the fate of prior bills to divine the meaning of enacted legislation.  'A bill can be proposed for any number of reasons, and it can be rejected for just as many others.'"  *Caraco Pharm. Labs, Ltd. v. Novo Nordisk A/S*, 566 U.S. 399, 422 (2012) (quoting *Solid Waste Agency of N. Cook Cty. v. Army Corps of Eng'rs*, 531 U.S. 159, 170 (2001)).

Contrary to the views expressed by the *amici*, legislators who played central roles in the enactment of the No Surprises Act have analyzed the Departments' rule, and have concluded that the rule, when it is properly understood, is fully consistent with the statutory text and with Congress's purposes in enacting the statute.  The Chairs of the Senate Committee on Health, Education, Labor and Pensions and the House Energy and Commerce Committee—which were key committees in the legislative negotiations—have "express[ed] their strong support" for the rule, which they describe as "consistent with Congress' intent when it enacted the No Surprises Act."  Letter from Sen. Patty Murray and Rep. Frank Pallone to Xavier Becerra, Secretary, U.S. Dep't of Health & Human Servs., at 1 (Jan. 7, 2022), https://perma.cc/5HKC-9ZFU.  In particular, they noted their understanding that "every bill considered by the committees" during the legislative process "included the [qualifying payment amount] as the primary rate that IDR entities should consider when making decisions."  *Id.* at 4.[2]  Likewise, the Chair and Ranking Member of the House Committee on Education on Labor—

---

[2]  *See also* Letter from Sen. Murray and Rep. Pallone to Xavier Becerra, Secretary, U.S. Dep't of Health & Human Servs., et al., at 2 (Oct. 19, 2021), https://perma.cc/UC5M-BKQC (describing the September rule as "consistent with our intent and our determination that the QPA, which reflects

who, again, were both centrally involved in the enactment of the statute—have expressed their understanding that the rule is "consistent with the plain language of the No Surprises Act, which makes clear the primacy of the QPA through its textual structure." Letter from Robert C. Scott, Chair, and Virginia Foxx, Ranking Member, House Comm. on Educ. and Labor, to Martin J. Walsh, Secretary, U.S. Dep't of Labor, at 3 (Nov. 19, 2021), https://perma.cc/CWH9-D2UD.

The Departments' rule faithfully implements Congress's instructions to establish an arbitration process that begins with the qualifying payment amount, and then allows for adjustments from that amount where a party presents information showing that a departure is warranted. The Plaintiffs' challenge to this rule should accordingly be rejected.

## CONCLUSION

For the reasons stated above and in the Defendants' Cross-Motion for Summary Judgment, the Defendants respectfully request that that motion be granted, and that the Plaintiffs' Motion for Summary Judgment be denied.

Dated: January 18, 2022               Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

BRIT FEATHERSTON
United States Attorney

JAMES GILLINGHAM
Assistant U.S. Attorney
Eastern District of Texas
110 N. College Street; Suite 700
Tyler, Texas 75702
E-mail: James.Gillingham@usdoj.gov
Phone: (903) 590-1400
Fax: (903) 590-1436
Texas State Bar # 24065295

---

standard market rates arrived at through private contract negotiations, represents a reasonable rate for services in a vast majority of cases").

SEAN C. DAY
Special Assistant United States Attorney
Eastern District of Texas
101 E. Park Blvd., Suite 500
Plano, Texas 75074
Phone: (202) 934-4060
Fax: (972) 590-1209
D.C. Bar No. 502363


ERIC B. BECKENHAUER
Assistant Branch Director

*/s/ Joel McElvain*
JOEL McELVAIN
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Phone: (202) 616-8298
Fax: (202) 616-8470
E-mail: joel.l.mcelvain@usdoj.gov
D.C. Bar No. 448431

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify on this 18th day of January, 2022, a true and correct copy of this document was served electronically by the Court's CM/ECF system to all counsel of record.


*/s/ Joel McElvain*
JOEL McELVAIN